UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VERISIGN, INC.,<br><br>      Plaintiff,<br><br>vs.<br><br>XYZ.COM, LLC AND DANIEL NEGARI,<br><br>      Defendants. | Case No. 2:15-MC-00054-RSL<br><br>Re:  Subpoena Issued In Civil Action No. 1:14-CV-01749 (E.D. Va.)<br><br>VeriSign, Inc.'s (1) Motion To Transfer Subpoena Dispute To The Trial Court; Or In The Alternative, (2) Brief In Opposition To Donuts Inc.'s Motion To Quash And Cross-Motion To Compel Production<br><br>Note On Motion Calendar:  June 19, 2015 |

VeriSign, Inc.'s Motion to Transfer Donuts Inc.'s
Motion to Quash

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street, Suite 2800
Seattle, WA 98101
Phone: (206) 905-7000

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

FACTS .......................................................................................................................................... 2

ARGUMENT ................................................................................................................................ 4

    I.   The Court Should Transfer This Dispute To The Eastern District Of Virginia. ........................................................................................................... 4

    II.  If The Court Addresses This Dispute, It Should Deny Donuts' Motion To Quash and Compel Production. ................................................................... 7

        A.   The Subpoena Does Not Impose An Undue Burden On Donuts. ........................................................................................................ 7

            i.   The Subpoena Seeks Relevant Information. ............................ 8

            ii.  The Subpoena Does Not Improperly Duplicate Requests Issued To XYZ. ........................................................ 10

            iii. Verisign Has Offered To Reimburse Donuts' Costs Of Production. ............................................................... 11

        B.   The Subpoena Is "Ripe." ............................................................................. 12

        C.   The Protective Order Addresses Any Illusory Competitive Concerns. .................................................................................................. 12

CONCLUSION ........................................................................................................................... 12

VeriSign, Inc.'s Motion to Transfer Donuts Inc.'s
Motion to Quash

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street, Suite 2800
Seattle, WA 98101
Phone: (206) 905-7000

-i-

# TABLE OF AUTHORITIES

**CASES**

*Amiga, Inc. v. Hyperion VOF*,
  2008 WL 163622 (W.D. Wash. Jan. 17, 2008) ........................................................................ 8

*AP Links, LLC v. Russ*,
  299 F.R.D. 7 (E.D.N.Y. 2014) ............................................................................................. 11

*Briggs v. Am. Laser Centers of Vancouver, LLC*,
  2007 WL 2116397 (W.D. Wash. July 19, 2007) .................................................................... 7

*Chem-Aqua, Inc. v. Nalco Co.*,
  2014 WL 2645999 (N.D. Tex. June 13, 2014) ....................................................................... 4

*Compaq Computer Corp. v. Packard Bell Electronics, Inc.*,
  163 F.R.D. 329 (N.D. Cal. 1995) ..................................................................................... 9, 10

*Concord Boat Corp. v. Brunswick Corp.*,
  169 F.R.D. 44 (S.D.N.Y. 1996) ............................................................................................. 7

*Cont'l Auto. Sys., U.S., Inc. v. Omron Auto. Electronics, Inc.*,
  2014 WL 2808984 (N.D. Ill. June 20, 2014) ......................................................................... 5

*Diamond State Ins. Co. v. Rebel Oil Co.*,
  157 F.R.D. 691 (D. Nev. 1994) ........................................................................................... 10

*F.T.C. v. v. A+Fin. Ctr., LLC*,
  2013 WL 6388539 (S.D. Ohio Dec. 6, 2013) ........................................................................ 4

*Flemming v. Parnell*,
  2013 WL 3270401 (W.D. Wash. June 26, 2013) ................................................................ 12

*Frank Brunckhorst Co. v. Ihm*,
  2012 WL 5250399 (E.D. Pa. Oct. 23, 2012). ........................................................................ 9

*Heroic Era, Ltd. v. Evony, LLC*,
  2011 WL 308468 (W.D. Wash. Jan. 27, 2011) ..................................................................... 6

*Moon Mountain Farms, LLC v. Rural Cmty. Ins. Co.*,
  301 F.R.D. 426 (N.D. Cal. 2014) ....................................................................................... 4, 7

*Rivera v. NIBCO, Inc.*,
  384 F.3d 822 (9th Cir. 2004) ................................................................................................. 7

*Simplex Mfg. Co. v. Chien*,
  2012 WL 3779629 (W.D. Wash. Aug. 31, 2012) .................................................................. 7

*Smith v. ServiceMaster Holding Corp.*,
  2012 WL 293824 (W.D. Wash. Jan. 30, 2012) ..................................................................... 6

VeriSign, Inc.'s Motion to Transfer Donuts Inc.'s
Motion to Quash

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street, Suite 2800
Seattle, WA 98101
Phone: (206) 905-7000

-ii-

*Tradebay, LLC v. eBay, Inc.*,
    278 F.R.D. 597 (D. Nev. 2011) .............................................................................................. 12

*Wultz v. Bank of China, Ltd*,
    304 F.R.D. 38 (D.D.C. 2014).................................................................................................. 6

**FEDERAL CASES**

Fed. R. Civ. P. 45 ............................................................................................................................ 4

**INTRODUCTION**

Donuts Inc. has moved to quash a non-party subpoena that contains just four document requests. The discovery was sought for litigation pending in the District Court for the Eastern District of Virginia, *VeriSign, Inc v. XYZ.COM and Daniel Negari*. Donuts does not deny it has responsive documents, but it has made no effort to comply with any aspect of the subpoena or to explain why the routine document requests are unduly burdensome. Instead, the company's motion is based almost exclusively on its view of the merits of the underlying litigation and its contention that VeriSign, Inc. ("Verisign") has improperly used the tools of discovery to engage in corporate espionage. The truth, however, is much less sinister.

This should have been a run-of-the-mill discovery disagreement, and Verisign and Donuts should have been able to resolve their differences without the Court's assistance. But Donuts refused to compromise at all, and now it has filed an inflammatory motion, supported by an unusual declaration from counsel for the defendants in the underlying matter. Donuts seeks more expansive and expensive side litigation—all to thwart its production obligations. Without ever addressing the purported burdens raised by the subpoena, the company declined to produce even a single responsive document. The company refused to meaningfully meet-and-confer with Verisign. Instead, just three days after defendant XYZ lost a discovery motion in the Eastern District of Virginia, counsel for XYZ joined Donuts in filing the motion to quash here. This was before the parties had even discussed ways to limit the hypothetical burden of compliance, such as potential search terms or document custodians.

Based on the substance and tenor of its filing, it is clear Donuts sees this motion as an opportunity to litigate issues that stretch far beyond the scope of the subpoena. Donuts' motion throws around terms like Verisign's "market power," and "dominance," seeking to transform this routine discovery dispute into something else. These tactics, as Donuts is well aware, are designed to prejudice Verisign in the underlying matter because the scheduling order does not allocate time for Verisign to correct Donuts' distorted view of the marketplace.

| VeriSign, Inc.'s Motion to Transfer Donuts Inc.'s Motion to Quash | Quinn Emanuel Urquhart & Sullivan LLP<br>600 University Street, Suite 2800<br>Seattle, WA 98101<br>Phone: (206) 905-7000 |
|---|---|

-1-

The underlying litigation is pending on the so-called "Rocket Docket" of the Eastern District of Virginia. The trial court has entered a scheduling order with a deadline for Verisign to produce its expert reports on June 19, 2015—*just 18 days from now*. With that deadline looming, exceptional circumstances require that this matter be resolved quickly, on the merits of the discovery dispute alone. The trial court has already ruled on discovery disputes relating to XYZ's failure to provide discovery, and has an additional motion now pending that is also related to XYZ's continued efforts to obstruct discovery. The court that is in the best position to address Donuts' discovery objections regarding relevance and burden without disrupting the underlying case schedule is the trial court in which the matter is pending. Verisign therefore respectfully requests that the Court enter an order to transfer this dispute to the Eastern District of Virginia.

Given the posture of this motion and the pace of the underlying litigation, Verisign asks the Court to resolve this matter through an immediate transfer order. If, however, the Court is inclined to rule on Donuts' motion, Verisign respectfully submits that the motion should be denied and requests that the Court order Donuts to comply with the subpoena immediately. The objections advanced by Donuts have no merit. First, Verisign's document requests seek relevant information—they target communications that are directly related to the actionable statements in the underlying action. Second, the subpoena is clearly "ripe;" the trial court has never stayed discovery in the underlying case, and there are no longer any pending dispositive motions before the trial court. Finally, Donuts' concerns surrounding the abuse of purportedly confidential information are illusory. The trial court has entered a protective order in the underlying action; it ensures that only counsel will review Donuts documents that contain truly sensitive information.

**FACTS**

For more than 15 years Verisign has operated the domain name registry for the largest generic top-level domain on the Internet, .COM, along with a number of other top-level domains. DePalma Aff. ¶ 3.

XYZ.com LLC ("XYZ") and Donuts each operate alternative domain name registries.

VeriSign, Inc.'s Motion to Transfer Donuts Inc.'s
Motion to Quash

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street, Suite 2800
Seattle, WA 98101
Phone: (206) 905-7000

-2-

DePalma Aff. ¶¶ 6-7.  In 2014, XYZ launched a false and deceptive advertising campaign to attack Verisign's products and services, including the .COM domain.  DePalma Aff., Ex. C ¶¶ 16-35.  Both XYZ and Daniel Negari, its Chief Executive Officer, made statements about Verisign and the .COM domain that were literally false, causing harm to Verisign's business.  *Id*.

On December 19, 2014, Verisign sued both XYZ and Negari, alleging that their false statements violated the Lanham Act.  DePalma Aff. ¶ 9-10.  The case is now proceeding along a typical "Rocket Docket" schedule in the Eastern District of Virginia.  *Id*. ¶ 11.  Discovery opened on March 30, 2015, and under the case schedule, Verisign's expert reports are due on June 19, 2015.  *Id*.  The deadline for the completion of all discovery is August 14, 2015.  *Id*.

Defendant Negari made one of the false and misleading statements at issue in the underlying litigation during an appearance he made on a National Public Radio program.  DePalma Aff., Ex. C ¶ 27.  Daniel Schindler, a co-founder of Donuts, appeared in the same radio segment.  DePalma Aff. ¶ 13.  On May 5, 2015, Verisign served a document subpoena on Donuts, seeking documents related to Schindler's involvement in that radio program and the subject matters discussed during the program, including the continuing viability of the .COM domain.  *Id*. ¶ 15.

On May 13, 2015, Donuts objected that the subpoena was not "ripe" and asked Verisign to withdraw the subpoena until the trial court ruled on XYZ's motion for judgment on the pleadings, which was then pending.[1]  DePalma Aff. ¶ 18.  Verisign refused to withdraw the subpoena, and Donuts responded by asserting a new objection.  This time Donuts maintained the subpoena was duplicative because it sought documents that were also in XYZ's files.  *Id*. ¶ 19.

The parties telephonically met and conferred to discuss Donuts' objections on May 14, 2015.  *Id*. ¶ 20.  During that discussion, Donuts asserted yet another objection, claiming the documents sought by the subpoena were not relevant to Verisign claims.  *Id*.  Verisign addressed all of Donuts' objections during that conversation.  *Id*. ¶¶ 21-25.  Verisign then elaborated on its

---

[1] On May 28, 2015, the trial court denied XYZ's motion.  DePalma Aff. ¶ 32, Ex. N.

position by email on May 18, 2015. *Id.* ¶ 28. The same day, and only three days after XYZ lost its discovery motion in Virginia, Donuts and counsel for XYZ came to this court and moved to quash the subpoena. *Id.*

Donuts never raised any concerns regarding the competitive sensitivity of the information sought by the subpoena before filing its motion to quash. *Id.* ¶ 29.

**ARGUMENT**

**I.     The Court Should Transfer This Dispute To The Eastern District Of Virginia.**

Under "exceptional circumstances" a district court may transfer a non-party's motion to quash a subpoena to the trial court that issued the subpoena. Fed. R. Civ. P. 45(f). Exceptional circumstances exist when a ruling on the motion could disrupt the trial court's management of the underlying litigation. Fed. R. Civ. P. 45 Advisory Committee's Note; *F.T.C. v. v. A+Fin. Ctr., LLC*, 2013 WL 6388539, at *2 (S.D. Ohio Dec. 6, 2013); *Chem-Aqua, Inc. v. Nalco Co.*, 2014 WL 2645999, at *3 (N.D. Tex. June 13, 2014). Concerns regarding judicial economy also weigh heavily in favor of a transfer order. Where there is a risk of duplicative or inconsistent rulings regarding similar issues, courts have found that it is proper to transfer the dispute to the trial court overseeing the underlying litigation. *Moon Mountain Farms, LLC v. Rural Cmty. Ins. Co.*, 301 F.R.D. 426, 429 (N.D. Cal. 2014) ("When the issuing court has already ruled on issues presented by a subpoena-related motion, exceptional circumstances exist and the court of compliance may transfer the motion to the issuing court.").

Exceptional circumstances are present here. Donuts' motion effectively asks the Court to reconsider questions regarding the scope of discovery that have already been resolved in the Eastern District of Virginia. The trial court has already addressed the scope of discovery in the context of a motion brought by Verisign to compel production from Defendants in the underlying action, and it concluded that requests addressing similar subject matters to those identified in the subpoena are relevant to Verisign's claims. DePalma Aff. ¶ 33. Moreover, because Defendants have continued to obstruct discovery, Verisign filed another motion to compel on May 29, 2015, seeking, among other things, communications between Defendants and Donuts. *Id.* ¶ 34.

VeriSign, Inc.'s Motion to Transfer Donuts Inc.'s
Motion to Quash

-4-

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street, Suite 2800
Seattle, WA 98101
Phone: (206) 905-7000

Defendants have not produced any such communications and, as of the time of this filing, that motion remains pending. *Id.* In light of Verisign's pending motion and the trial court's earlier rulings, the court in the Eastern District of Virginia is in the best position to determine the relevance and importance of the information sought by the subpoena.

Verisign has serious concerns that Donuts and XYZ are working together to effectuate a divide-and-conquer strategy to obstruct the development of Verisign's claims. Indeed, there is no question that they are in close communication, as demonstrated by the declaration XYZ's counsel submitted in support of Donuts' motion to quash. In the underlying litigation, despite a court order, XYZ has resisted discovery at every turn, requiring Verisign to bring two motions to compel discovery. Meanwhile, Donuts has refused to provide discovery and filed its motion to quash across the country in this Court. These coordinated tactics will inevitably interfere with the proceedings in the District Court in the Eastern District of Virginia.

If this motion is not transferred to the Eastern District of Virginia, there is a real danger that a ruling by this Court could unfairly prejudice Verisign's ability to prosecute its claims. Verisign has issued other document requests concerning the same subject matters that are identified in the Donuts subpoena, including document requests it has propounded on the defendants in the underlying action. Any ruling regarding the scope of the Donuts subpoena, particularly with regard to relevance, will have far-reaching implications and is inextricably intertwined with the merits of the underlying litigation. *See Cont'l Auto. Sys., U.S., Inc. v. Omron Auto. Electronics, Inc.*, 2014 WL 2808984, at *2 (N.D. Ill. June 20, 2014) (transferring a subpoena dispute after finding that the requested relevance determination was "inextricably bound up" in the merits of underlying case). Given the interplay between these requests, the trial court in the Eastern District of Virginia should be the court to resolve Donuts' objections with respect to both scope and relevance once and for all.

Even before the 2013 Amendments to Rule 45, courts in this district recognized that the trial court overseeing the litigation is often the best forum to resolve this type of discovery dispute. In fact, several courts in this district transferred subpoena-related motions to the trial

VeriSign, Inc.'s Motion to Transfer Donuts Inc.'s  
Motion to Quash

Quinn Emanuel Urquhart & Sullivan LLP  
600 University Street, Suite 2800  
Seattle, WA 98101  
Phone: (206) 905-7000

-5-

court on that basis alone. *See Heroic Era, Ltd. v. Evony, LLC*, 2011 WL 308468, at *1 (W.D. Wash. Jan. 27, 2011) ("Because the Northern District of California can best determine the propriety of the underlying subpoena, the Court reserves ruling and transfers the motion to the Northern District of California."); *Smith v. ServiceMaster Holding Corp.*, 2012 WL 293824, at *2 (W.D. Wash. Jan. 30, 2012) (accord). Since the current version of Rule 45 went into effect, similar concerns have led courts in other districts to transfer subpoena disputes back to the trial court. *See Wultz v. Bank of China, Ltd*, 304 F.R.D. 38, 46 (D.D.C. 2014) ("Judge Scheindlin is in a better position to rule on the intervenors' motion to quash or modify the subpoena due to her familiarity with the full scope of issues involved as well as any implications the resolution of the motion will have on the underlying litigation.").

The same logic holds here. The District Court for the Eastern District of Virginia has already considered and ruled on one discovery dispute, and has another pending. DePalma Aff. ¶ 33-34. Moreover, there is a greater factual history at play than cited in Donuts' pleadings. It would require greater resources and time for Verisign to brief the Court on all of the issues that are relevant to the scope of discovery. This would not be necessary in the District Court in the Eastern District of Virginia, as that court already is up to speed on these issues. Time, however, is not on Verisign's side. The deadline for the exchange of expert reports, June 19, 2015, is approaching fast. Verisign needs to move forward expeditiously with third-party discovery to meet that deadline, and the fastest way to resolve this matter is to transfer it back to the trial court that issued the underlying subpoena.

Verisign recognizes, of course, that when considering whether to transfer a discovery dispute involving a non-party, the court must consider the potential burden that litigating the dispute in another forum may impose on the non-party. In this case, however, a transfer will not impose any meaningful burden on Donuts. Donuts has ample resources at its disposal to ensure

VeriSign, Inc.'s Motion to Transfer Donuts Inc.'s
Motion to Quash

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street, Suite 2800
Seattle, WA 98101
Phone: (206) 905-7000

-6-

1  its interests are properly represented.[2]  *Cf. Moon Mountain Farms*, 301 F.R.D. at 430

2  (transferring a subpoena dispute after finding that litigation costs alone do not impose unfair

3  prejudice on a non-party).

4        In light of the foregoing, Verisign respectfully requests that the Court transfer this entire

5  matter back to the Eastern District of Virginia.

6  **II.   If The Court Addresses This Dispute, It Should Deny Donuts' Motion To Quash and
7  Compel Production.**

8        If the Court decides to consider the merits of Donuts' motion, it should deny Donuts'

9  request.  "[T]he broad right of discovery is based on the general principle that litigants have a

10 right to every man's evidence, and that wide access to relevant facts serves the integrity and

11 fairness of the judicial process by promoting the search for the truth."  *Rivera v. NIBCO, Inc.*,

12 384 F.3d 822, 824 (9th Cir. 2004) (internal quotations omitted).  Consistent with that standard,

13 Verisign has the right to "seek discovery into any matter that is not privileged but which is

14 reasonably calculated to lead to the discovery of admissible evidence."  *Briggs v. Am. Laser*

15 *Centers of Vancouver, LLC*, 2007 WL 2116397, at *1 (W.D. Wash. July 19, 2007).  Measured

16 against those guiding tenets, Donuts' objections do not withstand close scrutiny.

17       **A.**   *The Subpoena Does Not Impose An Undue Burden On Donuts.*

18       When a non-party moves to quash a document subpoena, it bears the burden of

19 persuading the Court that the party propounding the request is not entitled to the discovery it

20 seeks.  *Simplex Mfg. Co. v. Chien*, 2012 WL 3779629, at *1 (W.D. Wash. Aug. 31, 2012);

21 *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996) ("[T]he burden of

22 persuasion in a motion to quash a subpoena issued in the course of civil litigation is borne by the

23 movant.") (quotations omitted).  To meet this burden of persuasion, the non-party must come

24 forward with more than conclusory allegations and argument.  *Briggs*, 2007 WL 2116397, at *2;

25

---

26  [2] Donuts depicts itself as a small company without means.  That is hardly the case.  Donuts' website trumpets the fact that it raised over $100 million and notes its offices in Seattle, Los Angeles, Chicago and London.  DePalma
27  Aff. ¶ 7.

28 VeriSign, Inc.'s Motion to Transfer Donuts Inc.'s       Quinn Emanuel Urquhart & Sullivan LLP
Motion to Quash       600 University Street, Suite 2800
      Seattle, WA 98101
      Phone: (206) 905-7000

*Amiga, Inc. v. Hyperion VOF*, 2008 WL 163622, at *1 (W.D. Wash. Jan. 17, 2008).  Donuts has failed to meet that burden here.

Donuts' sixteen-page motion contains sparse citations to anything that resembles a factual record.  Indeed, the "Background" section of its brief does not contain a single reference to an affidavit setting forth the purported facts that support its position.  Where facts are necessary to support its view, Donuts provides only rhetoric.  That is not enough to meet its burden; and as a result, Donuts' motion should be denied.

    *i.*    *The Subpoena Seeks Relevant Information.*

Donuts argues that the subpoena seeks information that is irrelevant to Verisign's claims.  The company's contentions, however, have no merit.  Verisign seeks documents that are relevant to the very core of its case.  To argue otherwise, Donuts must gloss over the clear link between its communications with XYZ and the very statements that are foundational components of Verisign's claim.

In the underlying case, Verisign has sued XYZ and its CEO, Daniel Negari, to recover damages it has incurred as a result of false and misleading statements they have made regarding Verisign's core business.  One of the statements at the center of that case is a claim Negari made during an appearance on National Public Radio.  DePalma Aff., Ex. C ¶ 27.  Daniel Schindler, one of the co-founders of Donuts, appeared in the same radio program.  DePalma Aff. ¶ 13.  Verisign's document requests are tailored to obtain (1) communications Donuts exchanged with the Defendants regarding the topics covered during that NPR segment (i.e., Verisign or .COM); and (2) other communications regarding the NPR segment itself, including communications concerning preparation for the program, or reactions to statements made during the program.

As the trial court in the Eastern District of Virginia has already ruled, those requests are directly relevant to Verisign's claims.  To prevail in its Lanham Act claim regarding the statements made by Negari during the NPR segment, Verisign needs to show that Negari's statements were false or deceptive.  Given Schindler's position in the industry and involvement in the radio program, his communications regarding Negari's statements may provide valuable

insight into Negari's intent, as well as how those statements could be viewed by other industry participants, including whether knowledgeable persons would believe the statements were false.

Furthermore, one of the statements detailed in the Complaint in the underlying matter is Negari's false characterization of the availability of .COM domain names in his appearance on National Public Radio: "The only thing that is left [in the .COM registry] is something with a dash, or maybe three dashes and a couple of numbers in it." DePalma Aff., Ex. C ¶ 27. This false statement is quite similar to statements made by Donuts executives recently, such as: "essentially [the only .COM names left are] a collection of random letters, numbers, and dashes." DePalma Aff. ¶ 14. Donuts also has stated that "Good, short domain names are exceptionally hard to find." *Id*. Verisign legitimately seeks to understand through its narrowly-tailored discovery of non-party Donuts whether and to what extent XYZ influenced or caused Donuts' publication of these falsehoods. Such evidence is highly relevant to the potential damages XYZ's statements have caused, and the need for permanent injunctive relief. Indeed, if the two parties have coordinated their efforts to disseminate such false statements, Verisign has sustained even greater damages as a result of XYZ's conduct than those that can be directly tied to statements made by XYZ or Negari.

Other courts have rejected similar arguments to those advanced by Donuts here, finding that discovery from non-party competitors is clearly relevant in Lanham Act cases. Those courts have permitted such discovery because insight into another industry participant's perspective can be an important consideration when evaluating whether a statement made in an advertisement is objectively false. *Compaq Computer Corp. v. Packard Bell Electronics, Inc.*, 163 F.R.D. 329, 336 (N.D. Cal. 1995); *Frank Brunckhorst Co. v. Ihm*, 2012 WL 5250399, at *8 (E.D. Pa. Oct. 23, 2012). Verisign wants to pursue similar discovery here for the same reason. Discovery from Donuts will illuminate not only the circumstances surrounding Negari's statement, but also whether other industry participants have been influenced by Negari's false statements about .COM.

If the Court has any doubts regarding the relevance of the documents in question, it must

VeriSign, Inc.'s Motion to Transfer Donuts Inc.'s
Motion to Quash

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street, Suite 2800
Seattle, WA 98101
Phone: (206) 905-7000

-9-

resolve those doubts in Verisign's favor.  "A district court whose only connection with a case is supervision of discovery ancillary to an action in another district should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder.  Where relevance is in doubt the court should be permissive."  *Compaq*, 163 F.R.D. at 335 (quotations omitted).  In light of the insufficient record Donuts has submitted and the clear connections between the subpoena and the underlying litigation, Donuts' motion to quash on grounds of relevance must be denied.

       *ii.*      *The Subpoena Does Not Improperly Duplicate Requests Issued To XYZ.*

Donuts also claims that Requests No. 1 and No. 2 in the subpoena are improper because Verisign propounded a similar set of document requests on XYZ, a defendant in the underlying litigation.[3]  Donuts seeks to invoke what amounts to a *per se* prohibition on the issuance of a third-party subpoena that overlaps in any way, shape, or form with any document request that has been propounded on a party.  Contrary to Donuts' view, the rules permitting third party discovery are not so exacting.

As several courts have recognized, particularly in the context of modern e-discovery, the fact that a document may once have passed between two firms does not necessarily mean that both firms will be able to produce the same document in discovery.  As time passes, documents are lost or destroyed—either intentionally or inadvertently—in the ordinary course of business.  Accordingly, to provide litigants a full and fair opportunity to obtain complete discovery, courts have allowed a party to issue document subpoenas to third parties seeking information that may also be in the possession of another litigant.  *See Diamond State Ins. Co. v. Rebel Oil Co.*, 157 F.R.D. 691, 697 (D. Nev. 1994) ("The court recognizes the apparent duplication of portions of the separate discovery requests served upon Western General and Diamond State.  However, although they are duplicative in part, the discovery requests have been directed toward two separate business entities (i.e. Western General and Diamond State) and the documents actually

---

[3] XYZ's counsel has offered an unusual declaration in support of Donuts' motion, in which he provides not only factual statements regarding the underlying proceedings, but also his personal opinions regarding the merits of Verisign's discovery requests.  Conjecture provided by XYZ's counsel is wholly irrelevant to the issues presented to the Court in Donuts' motion and should be stricken from the record.

VeriSign, Inc.'s Motion to Transfer Donuts Inc.'s      Quinn Emanuel Urquhart & Sullivan LLP
Motion to Quash     600 University Street, Suite 2800
    Seattle, WA 98101
-10-     Phone: (206) 905-7000

maintained in the files of each entity may not be identical.").

As Verisign explained to Donuts during meet-and-confer discussions, even though there *may* be some overlap between documents that are responsive to the subpoena and the documents that are responsive to requests served on XYZ, there is no way to know whether the documents in each company's files are actually identical. Indeed, Verisign has good reason to believe that the files might not be identical, as Defendant Negari has previously been accused of destroying relevant evidence in another civil case. DePalma Aff., Ex. C ¶ 61. At this point, XYZ has yet to produce a single communication between XYZ and Donuts. *Id*. ¶ 34.

Accordingly, neither Verisign nor Donuts has any way of knowing whether there is any overlap between the responsive documents XYZ may have in its possession and those in Donuts' files. DePalma Aff. ¶ 26. Donuts therefore cannot credibly claim that it should be relieved from its obligation to respond to the subpoena because all responsive documents in its files necessarily reside in XYZ's files. *See AP Links, LLC v. Russ*, 299 F.R.D. 7, 13 (E.D.N.Y. 2014) ("As pointed out by Plaintiff's counsel, since Attorney Batista does not know what communications Plaintiffs have, and Plaintiffs do not know what communications Attorney Batista has, Attorney Batista has not met his burden to show that the request is overly broad or duplicative under applicable case law.").

   *iii.* *Verisign Has Offered To Reimburse Donuts' Costs Of Production.*

Donuts has failed to make a sufficient showing that the burden associated with compliance is not reasonable under the circumstances. Ignoring its meet-and-confer obligations, Donuts has not attempted to quantify or describe the volume of information at issue or the effort that will be required to collect and review information in response to the subpoena. But in any event, whatever the financial burdens on Donuts may be, they are irrelevant. The offer Verisign made during pre-motion discussions with Donuts' counsel still stands—Verisign will reimburse Donuts for the reasonable expenses it incurs through document production. DePalma Aff. ¶¶ 22, 27.

VeriSign, Inc.'s Motion to Transfer Donuts Inc.'s
Motion to Quash

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street, Suite 2800
Seattle, WA 98101
Phone: (206) 905-7000

-11-

### B. *The Subpoena Is "Ripe."*

Donuts also argues that the subpoena is not "ripe" because XYZ filed a motion for judgment on the pleadings in the underlying action. This contention is flatly inconsistent with the law. The trial court has not stayed discovery in the underlying action, and the mere filing of a potentially dispositive motion does not stay discovery in federal cases. *See Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 600 (D. Nev. 2011). Thus, XYZ's motion has no impact on Donuts' obligation to respond to the subpoena.

Moreover, setting aside the merits of Donuts' view, the trial court denied XYZ's motion on May 28, 2015, eliminating any colorable basis for this objection. DePalma Aff. ¶ 32, Ex. N.

### C. *The Protective Order Addresses Any Illusory Competitive Concerns.*

Contrary to Donuts' apparent understanding of the law, a non-party cannot avoid its obligation to respond to a subpoena by claiming it seeks the production of competitively sensitive information. In any event, this concern is now moot. There is already a mechanism in place in the underlying action that will enable Donuts to shield any truly competitively sensitive information from Verisign's layperson employees.

The trial court has entered a protective order, pursuant to the parties' stipulation, that enables any person producing materials in discovery to designate competitively sensitive materials "Attorney's Eyes Only." DePalma Aff. ¶ 31, Ex. M. Only counsel may access and review materials carrying the "Attorney's Eyes Only" designation. *Id.* Under similar circumstances, courts in this district have denied a third-party's motion to quash, finding that such a protective order strikes the appropriate balance between the non-party's competitive concerns and the party's right to obtain the information in discovery. *See Flemming v. Parnell*, 2013 WL 3270401, at *3 (W.D. Wash. June 26, 2013).

### CONCLUSION

For the reasons set forth herein, Verisign respectfully requests that the Court transfer Donuts' motion to quash to the Eastern District of Virginia, or, in the alternative, enter an order to deny Donuts' motion and compel compliance with the subpoena.

| | | |
|---|---|---|
| 1 | DATED: June 1, 2015 | Respectfully submitted, |
| 2 | | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 5 | | By /s/ Jenny A. Durkan |
| | | Jenny A. Durkan |
| 6 | | Attorneys for VeriSign, Inc. |

VeriSign, Inc.'s Motion to Transfer Donuts Inc.'s
Motion to Quash

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street, Suite 2800
Seattle, WA 98101
Phone: (206) 905-7000

-13-

# CERTIFICATE OF SERVICE

I, Jenny Durkan, am a partner at Quinn Emanuel Urquhart & Sullivan, LLP, and I represent VeriSign, Inc. in this action. I hereby certify that on June 1, 2015, I caused the foregoing document to be the served on Donuts Inc. by filing the document through ECF and emailing the company's counsel of record at the addresses below:

Thomas L. Boeder
TBoeder@perkinscoie.com

Elira Castilllo
ECastillo@perkinscoie.com

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099

I declare under the penalty of perjury that the foregoing is true and correct.

DATED: June 1, 2015               Respectfully submitted,

                                  QUINN EMANUEL URQUHART &
                                  SULLIVAN, LLP


                                  By /s/ Jenny A. Durkan
                                     Jenny A. Durkan
                                     Attorneys for VeriSign, Inc.

VeriSign, Inc.'s Motion to Transfer Donuts Inc.'s      Quinn Emanuel Urquhart & Sullivan LLP
Motion to Quash                                           600 University Street, Suite 2800
                                                                  Seattle, WA 98101
-14-                                                         Phone: (206) 905-7000